Anderson, J.
The building known as the National hotel in the city of Norfolk, was erected on a lot of land which wras held by French’s Hotel Company, under a demise by deed from the Mechanical Benevolent Society of Norfolk for a term of ten years, renewable for ten years, and for every successive period of ten years, determinable at the election of the lessor, at the expiration of any term, upon six montlis’ notice, by tailing the building and paying for it at valuation.
On the 1st of May, 1855, French’s Hotel Company, by deed conveyed, transferred and assigned all their right, title and interest in the leasehold and building to Bray B. Walters. And at a sale made by public auction under deeds of trust by the heirs of B. B. Walters, of said property, Thomas J. Corprew became the purchaser at the price of $34,000, and the trustees and the heirs united in a deed conveying the same to him, bearing date December 31st, 1870.
*616 Subsequently Corprew conveyed the same by several deeds of trust to secure debts due from him to the Merchants and Mechanics Bank; to the Norfolk Trust Corn-pay, and to the Exchange National Bank of Norfolk. And on the 31st of July, 1872, the said Corprew and Ms said creditors and trustees united in the sale of the same to the appellees, Janies R. Holt and Joseph H. Holt, and conveyed it to them by deed bearing date December 26, 1872, for the consideration of $37,100.
This suit was brought in chancery by the Mutual Assurance Society of Virginia against the said James R. and Joseph H. Holt, to subject the-property to the payment of arrearages which they allege to be due them, and to be chargeable on the said property by virtue of a declaration for insurance made in their society on the 17th of July, 1841, by the president of the Mechanical Benevolent Society of Norfolk, owner of the land, and the president of French’s Hotel Company, owner of the building, which was valued at $40,000, making the Merchants and Mechanics Savings Bank, the Norfolk Trust Company, and the Exchange National Bank and the trustees, and the Mechanical Benevolent Society also defendants.
James R. and Joseph H. Holt, in their joint answer, say that they have no knowledge of any of the allegations of the bill with regard to the insurance of tire property, and they call for strict proof thereof; and they allege and prove that they had no notice of said alleged insurance, or of any claim for aiTearages by said assurance society when they purchased, and in fact did not know of the existence of said society, and if there is anything due it, which they do not admit, they deny that the property in their hands is liable for its payment, and insist that the society should look to the former owners of the property for payment. But if it should appear that the society has any claim which is chargea *617 ble on the property, they insist that inasmuch as there is a balance of the purchase money stilL clue from them for the property they should be allowed to pay it out of the - same.
Their answer and the several pleas of the Merchants and Mechanics Savings Bank also put in issue the validity of the alleged contract of insurance, avering that it was contrary to the constitution, rules and regulations of the society; that the hotel company had not such interest in the property as was insurable, and the contract was, at the time of its inception, and now is, void and of none effect. And the Mechanical Benevolent Society, in its answer, denies that it owes anything to the plaintiff, or that there is now or ever has been any liability on it for quotas, or that there now is or ever has been any lieu upon the land therefor; and it avers that its president, by uniting with the president of the hotel company in the original declaration for assurance, did not create, nor was it intended to create, any lien or charge on said land, but was only intended to indicate its willingness and consent to the insurance of said buildings, upon which it had a previous lien, to the extent of the ground rent and the taxes.
And in this position it seems to be sustained by the acts of the plaintiff', and the hotel company subsequently; the latter making, and the former receiving from it a sole and separate declaration for insurance of the same property, in which reference is made to the former declaration, in which the Mechanical Benevolent Society had united as aforesaid, as the sole declaration of the hotel company, and the issue of a policy thereon accordingly. And in all the subsequent dealings between them no reference is made to the Mechanical Benevolent Society, but the hotel company is treated as the party solely insured, and liable for the quotas and requisitions of the *618 Mutual Assurance Society. And it could not be otherwise if the Mechanical Benevolent Society he regarded only as owner of the land, as represented in the original declaration. The land under the act of incorporation was not insurable. It was only an insurance of buildings against fire that was authorized by the act of incorporation. An insurance of land against fire involves an absurdity. And yet it seems to be contemplated by the constitution, rules and regulations of the society that the insured should have an interest in the land also, upon which tire buildings stand. By article vm, section 4, “Any person holding a complete unemcumbered fee simple title to buildings, with the land on which they stand;” “any tenant under lease renewable forever, or any persons holding buildings erected on land to which they have a legal title but subject to a ground rent forever, may make a complete and effectual insurance.” The averment of the joint answer of the Messrs. Holt is that the Mechanical Benevolent Society had no interest in the buildings, and that they and the preceding owners of the property have no other than a leasehold interest in the land, determinable at the expiration of every ten years, at the option of the Mechanical Benevolent Society. But when the leasehold of the land was terminated their title to the buildings was terminated also, and became vested in the Mechanical Benevolent Society. So it would seem that by the terms of the contract between the hotel company and the Benevolent Society, by which the former was privileged to erect buildings on the latter’s land, it had no better estate in them when erected than in the land. It held them precisely as it held the land—at the option of the Benevolent Society, only for the term or for any succeeding term. And it not being a fee, nor a lease renewable forever, and the hotel company not having a legal title to the land upon which the buildings stand, *619 but subject to a ground rent forever, It would seem to follow that it did not hold such interest in the property as was, according to the rules and regulations of the society, insurable. The question whether it was insurable jointly by the two companies need not be considered, as that was not done, if the plea of the Merchants and Mechanics Savings Bank is sustained; and if the acceptance by the Assurance Society of the separate declaration for insurance of the same property by the hotel company (iSTo. 14,837), and the issuing a policy thereon to said company, can be held to be a surrender or waiver by the Assurance Society of any right it might have had to hold the Benevolent Society bound by its having united in the original declaration. As to what is the effect of a declaration on revaluation is involved in some obscurity by the practice of the Assurance Society. If it was intended merely to revalue the property, and not for a renewal or modification of the contract, why should there be a declaration for insurance ? and why should a new policy issue thereon ?
There is another ground upon which it might be argued that the original contract of insurance was void, viz: that the property had been insured elsewhere for ten thousand dollars, when the original declaration for insurance was made in this society. By article viii, section 14, “Buildings insured elsewhere shall not be insured in this society.” And such insurance, it is declared, “shall be void.” There is a proviso; but that does not apply to this clause of absolute inhibition; but only to insurances obtained elsewhere, after the property has been insured in this society;, which are permitted on certain express conditions. These are interesting and important questions. As by article x, section 13, the society has declared that “ if a policy be at any time issued for the purpose of insuring a building, which according to *620 the rules and regulations'of the society, is not insurable, the fact that such building is not insurable being ascertained shall render the policy void and of no effect.” And by article xm, section 1, “the society only undertakes to pay for loss by fire, when the building has been insured in strict conformity to the constitution, rules and regulations of the society.” And the party claiming compensation is required to make affidavit that he “ doth believe that the said building” was “insurable and was properly insured in or by the said society according to the constitution, rules and regulations thereof.”
In view of these prescriptions and regulations of the society, I think it is but just and right that it should be held to make out a clear case of liability on its part to repair the loss if the building was damaged or destroyed by fire, before its claims for premiums and quotas, or other requisitions, could be enforced against the property, and consequently, that the proprietors of the buildings are entitled to the benefit of any doubts with regard to the validity of the insurance.
JBut this case must be considered in another of its aspects. The hotel company sold and conveyed its interest in the land and building by deed bearing date the 1st of May, 1855,to BrayB.Walters. And on the 12th day of October, 1857, William L. Walters, for himself and the other heirs of Bray B. Walters, then deceased, by declaration Ho. 18,615, declared for the assurance of said building, valued at $40,000, in the said assurance society, for $12,500, “ subject to a deed of trust on French’s Hotel Company; the sum of $5,000 being insured in the American and $5,000 in the Franklin offices.” It is agreed that there was no agent of the society in the city of Horfolk from about the 10th of May, 1862, to the 30tli of May, 1865, and that all communication between the city of Horfolk and the home office in the city of Rich *621 monel during that period was forbidden; and that on the 14th of January, 1864, the said property was insured in several other offices, together, for the sum of §20,000. ■ And this was before the sale and conveyance to Thomas J. Corprew.
According to article vm, section 14, the insurance in this society, if it was valid and in force up to the 14th of January, 1864, wlieu it was insured elsewhere to the amount of §20-000, then became void. The language of the section is: “Buildings insured elsewhere shall not be insured in this society, and if any person or persons owning a building or buildings now insured, or which may be hereafter insured in the office of this society, shall effect insurance thereof elsewhere, he, she or they, shall forfeit all benefit of the insurance made by this society on such building or buildings. Every insurance which has been, or hereafter may be, effected contrary to this rule, is, and shall be void.” But there is a conditional proviso in favor of any person “who has made, or may hereafter make, insurance in the office of this society, and shall be desirous of making farther insurance. in any other office on the same buildings,” that he “shall be at liberty to do so, and his insurance in this office shall be good and effectual; bat on condition only that the whole sum insured by this society and elsewhere, does not exceed four-fifths of the whole value shown by his * * declaration; and provided also, that such person or persons give written notice to the principal agent, of such farther insurance and the amount thereof, which shall be endorsed on the policy issued by this society and on the declaration filed in this office.”
Eeither of the foregoing conditions was complied with in this case. The insurance in this society, if it be only for §12,500, and the insurance elsewhere for §20,000, amount together to more than four-fifths of the whole *622 value of the property, as shown by the declaration. Ivor was the second condition complied with. The notice required is not shown to have been given, nor the endorsements made upon the policy and declaration as. required. This case does not fall within the proviso, and consequently by the positive declaration of said 14th section, the insurance is void.
But the clause next following provides that “ all premiums and quotas paid, or which may be required to be paid under any such insurance, shall be considered as forfeited to the society.” This language imports that •the invalidation of the insurance shall not entitle the insured to a restoration of what he had previously paid under the lawful requisitions of the society; nor to be released from premiums and quotas for which he was liable when the insurance became void, which may still be required to be paid, and the property held to be liable for them. But to hold that when the property is no longer insured, the owner is liable to pay for losses by fire, which parties insured have incurred, beyond what he had incurred a liability to pay before his insurance became void, would be to hold him liable to contribute for losses which others had sustained when there was no corresponding obligation on them to contribute for his losses, which would be violative of all mutuality in the contract, and destructive of the fundamental principle upon which this whole scheme of insurance is projected.
This plainly appears from the title to the act of incorporation, “an act for establishing a mutual assurance society againt fire,” &c.; and by the first clause of the second section, which enacts, “that an assurance be established to be called and known by the name of the Mutual Assurance Society,” and the principles whereof shall be “ that the citizens of this state may insure their buildings against the losses and damages occasioned *623 accidentally by fire, and that the insured pay the losses and expenses, each his share according to the sum insured.” To construe the clause of the article under consideration, as requiring the owner of the property after it had ceased to be insured, and when he is not one of the insured, to be subject to future orders for quotas and contributions to repair losses afterwards incurred by the insured, and when he would not have a corresponding right to a contribution from them, if his property was damaged or destroyed by fire, would be a plain violation of the foregoing provision of the act of incorporation in its letter and spirit.
The same remarks are applicable to the next clause of the said section, which is as follows: “Nevertheless, the property insured and the owners thereof, shall remain liable for all demands until regularly discharged, according to the laws and rules of the society.” “All demands ” can only mean what the society had a right to demand, which we have seen were only arrearages due, and with .which the property was chargeable when the insurance was terminated.
There is a mode prescribed by article rx, section 12, by which a member may be discharged, but it is not declared to be the only mode; and if it were, until so discharged, he could not, as we have seen, be held liable for after-requisitions made upon the insured when he was no longer insured, but only for such as were prior to the termination of his insurance. This mode provides for a voluntary and express withdrawal from the society; and there are two requisites to entitle him to a discharge in that mode: first, the payment of all premiums, quotas and other claims as are then .due from him; and second, notice of his withdrawal. If these requisites have been met they are effectual for his discharge, although a regular discharge may not have been granted him. JBut, as has been *624 said, it is not the only mode by which he may be discharged, as is implied by article vn, section 13. It provides that any member having paid the premiums on his buildings, the same being insurable, &c., shall be insured at 12 o’clock at noon of the day on which he may have made such payment, and such insurance shall continue to be in force until the same shall be withdrawn, unless the proprietor of the building so insured shall render the insurance void by some act which may be contrary to the rules and regulations of the society.
The effect of a discharge upon the interests of the society is not materially different-, whether it be in one way or the other. In both cases the existing liabilities for arrearages remain, but none can be subsequently created. And as to the notice, in the one case it is necessary to show that the insurances does not continue, nor the obligation of the society to repair his losses. In the other case notice was not necessary to invalidate the insurance. It was absolutely void by the insurances effected elsewhere, whether the society had notice thereof or not. The insured thereby lost his right to compensation if his buildings had been damaged or destroyed by lire, whether the society had had notice or not prior thereto that insurances had been effected elsewhere. It might have been of advantage to the society, in determining what amount of quotas should be levied to meet contingencies and risks, to have been informed of the insurances made elsewhere during the war; but such notice could not have been given pending the war, and it seems to me could not have been material, as the requisitions on the insured and the contingent liabilities of the society, so far as the buildings in question were concerned, were alike unenforceable; but the evidence shows, I think, that the society was informed of it soon after the war.
*625 I am of opinion, therefore, that the insurance being made absolutely void by the declaration of the society, after the insurances of the 14th of January, 1864, were -effected elsewhere, the heirs of Bray B. Walters, the then owners of the property, were not liable, after that period, to contribute quotas to raise a fund to repair losses by fire of the insured except on account of arrearages due from them before they ceased to lie insured, and consequently the property being uninsured when it was conveyed to Tilomas J. Corprew by deed on the 31st of December, 1870, it was not liable for quotas which accrued subsequently to the 14th of January, 1864. A fortiori it is not liable in the hands of the present owners, James B. and Joseph II. Holt. The property vus insured, at the time they purchased, in the Liverpool and London Globe for §15,000; in the Loyd, §10,000; and in the Queen, §5,000; together, §30,000; and they had no [knowledge of any insurance in this society, or of any charge upon the property in its favor.
H this were a claim to enforce a penalty for a wrongful act committed by the heirs of B. B. Walters, then it would be a question for a court of equity to determine whether the penalty, under the circumstances of the case, ought to be enforced against them; and if it could, whether it was not a personal liability, which attached to the person of the wrong-doer, and not chargeable on the property in the hands of an innocent purchaser, who had no participation in the wrong. But it is not a suit to enforce a penalty, but the payment of quotas, \yhich by the act of incorporation only the insured could he required to pay. It appears from the testimony of Samuel Pulliam that the society itself, in 1866 and ’67, instead of talking of imposing penalties, had formed the same conclusions I have reached, and was willing to have made an adjust *626 meut on substantially the same terms, upon the payment of all claims which had accrued up to the date of the period when insurance had been effected elsewhere during the war, and to abate all quotas accruing subsequent thereto. It was also willing to abate quotas for 1863 aud 1864.
In this case all dues and requisitions had been paid up to the 14th of January, 1864, except the quotas for 1863, which, if there had been a settlement, would have been abated under a resolution of the board of directors. Why should it now be asserted ? It is true that a formal notice of withdrawal was not executed; but the society was just as safe from liability of losses as if said formal notice had been executed. Its insurance was .void. If the views I have presented are correct, it had no right to claim what it seems it was willing to relinquish—not even the quota of 1863, if the declaration of Walters’ heirs was designed to be a continuation of the original contract; and if not, if it was a new contract, the property was insured elsewhere for $10,000. And by article viii, section 14, before recited, the society was absolutely forbid in such case to grant insurance; and if given, it is declared to be void. Moreover, William S. Walters, with whom the last contract of insurance, in 1857; was made, was only one of the nine heirs to whom the property doscended from 13. 33. Walters; and it does not appear that he had authority to execute the contract for the co-heirs. And the declaration is not subscribed by them; and it was necessary that all the parties in interest should have been united in the declaration.
I am of opinion, upon the whole, that there is no error in the decree of the court below dismissing the plaintiff’s bill, and am for affirming the same, with costs.
*627 Moncure, P., and Staples, J., concurred in the opinion of Anderson, J.
Christian and Burks, J’s, dissented.
Decree affirmed.